## KLINKE v MITSUBISHI MOTORS CORPORATION

Docket Nos. 168384, 183206, 183208. Submitted April 16, 1996, at Grand Rapids. Decided October 15, 1996, at 9:30 A.M. Leave to appeal sought.

James E. Klinke, as personal representative of the estate of Kimberly M. Klinke, brought a products liability action in the Livingston Circuit Court against Mitsubishi Motors Corporation, Chrysler Corporation, and John Colone Chrysler-Plymouth-Dodge, Inc., alleging negligent design and manufacture and breach of express and implied warranties regarding a Dodge automobile in which the decedent, while driving, had sustained fatal injuries in a one-car rollover accident. Mediation resulted in a $1.2 million evaluation in favor of the plaintiff, which the plaintiff accepted but the defendants rejected. A jury found no cause of action against Chrysler and Colone, found negligent manufacture of the car by Mitsubishi with respect to a fracture of the car's steering knuckle, found the decedent to have been ninety percent comparatively negligent in failing to wear the shoulder harness of the car's seat belt system, and awarded damages of $5,104,000, which the court, Daniel A. Burress, J., reduced by five percent to $4,848,000 pursuant to MCL 257.710e(6); MSA 9.2410(5)(6) for the decedent's comparative negligence. The court also awarded costs and attorney fees to the plaintiff and against Mitsubishi pursuant to MCR 2.403(O) and 2.625, but denied Chrysler's and Colone's request for an award of costs under MCR 2.625. Mitsubishi, Chrysler, and Colone appealed, and the plaintiff cross appealed the trial court's exclusion of certain expert witness fees and attorney fees from the award of costs and attorney fees. The appeals were consolidated.

The Court of Appeals held:

1. The plaintiff's recovery of damages is subject to reduction by the full extent of the decedent's comparative negligence pursuant to MCL 600.2949(1); MSA 27A.2949(1), now MCL 600.2957-600.2960; MSA 27A.2957-27A.2960, which provides that in a products liability action, like the plaintiff's action, damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff. MCL 257.710e(6); MSA 9.2410(5)(6), which provides that the failure to wear a safety belt may be considered evidence of negligence and may reduce by no more than five

percent the recovery of damages arising out of the ownership, maintenance, or operation of a motor vehicle, does not apply to the plaintiff's recovery of damages against Mitsubishi for the negligent manufacture of the car inasmuch as Mitsubishi's liability did not arise out of its ownership, maintenance, or operation of a motor vehicle. The trial court erred in applying MCL 257.710e(6); MSA 9.2410(5)(6), and, on remand, the trial court must apply MCL 600.2949(1); MSA 27A.2949(1) to properly reduce the award of damages on the basis of the decedent's comparative negligence.

2. The trial court did not err in denying Mitsubishi's motion for a directed verdict with regard to the claim of negligent manufacture. The plaintiff presented evidence that the steering knuckle was defective and that the defect caused the accident.

3. The trial court did not abuse its discretion in denying Mitsubishi's motion for a new trial. The jury's verdict was not against the great weight of the evidence.

4. The trial court did not abuse its discretion in admitting into evidence photographs taken of the decedent after the accident. The photographs were relevant in demonstrating injuries testified to by witnesses and bore on such issues as the decedent's conscious pain and suffering and whether the wearing of the shoulder harness would have had an effect on the extent of the injuries.

5. The trial court did not abuse its discretion in admitting into evidence photographs of fractured iron from a learned treatise. Mitsubishi failed to object at trial, and the display of the photographs to the jury complied with MRE 707.

6. A delay in the delivery of a defense exhibit to the jury during its deliberations does not require the grant of a new trial in the absence of a showing by Mitsubishi of prejudice and in the absence of supporting authority that such a delay mandates a new trial.

7. The trial court did not err in refusing to allow the jury to listen to an audio tape of an eyewitness' statement. Sound quality was poor when the tape was played on the trial court's equipment, and the jury was provided a transcript of the statement to allow the jury to compare the witness' statement to the witness' testimony at trial.

8. The plaintiff's counsel, in the absence of supporting evidence, made an improper closing argument that the decedent would have died in the accident even if she had worn the shoulder harness. However, the trial court gave a curative instruction to the jury, and the jury's finding of ninety percent comparative negligence by the decedent indicates that Mitsubishi was not prejudiced by the improper argument.

9. The jury's award of damages for the decedent's conscious pain and suffering between the time of injury and the time of death is permitted by the wrongful death statute and is supported by the evidence presented at trial.

10. The trial court did not abuse its discretion in refusing Mitsubishi's requests for jury instructions concerning mitigation of damages in the absence of any evidence that the decedent should have mitigated her damages. Mitsubishi based its defense on comparative negligence, and the jury was properly instructed about comparative negligence. The trial court did not abuse its discretion in refusing to give special instructions requested by Mitsubishi inasmuch as the instructions that were given covered the issues raised by the requested special instructions. Other claims of instructional error need not be addressed in the absence of citations of supporting authority by Mitsubishi.

11. The trial court did not abuse its discretion in denying Mitsubishi's motion for remittitur with regard to the award of damages for loss of society and companionship. The award is within the limits of what reasonable minds would consider just compensation.

12. The trial court, in denying Mitsubishi's motion for a new trial, correctly ruled that the jury did not render an inconsistent verdict by finding that the decedent's injuries were proximately caused by Mitsubishi's negligence but not by Mitsubishi's breach of implied warranty. The jury's conclusions were not so logically or legally inconsistent that they are irreconcilable.

13. In light of the eventual reduction of damages for the plaintiff, the trial court's award of costs and attorney fees must be reconsidered. Any such award must be pursuant to MCR 2.625 only, inasmuch as no award can now be made under the mediation court rule, MCR 2.403(O)(3). In making its award of costs and attorney fees, the trial court did not abuse its discretion in excluding from the expert witness fee award fees relating to an expert's mistaken pursuit of a theory regarding the product defect. The trial court also properly rejected Mitsubishi's contention that costs should be apportioned in light of the multiplicity of claims and the fact that the plaintiff prevailed with respect to a single claim. For purposes of awarding costs under MCR 2.625(B)(2), a prevailing party's alternative theories or claims arising out of the same transaction or occurrence are treated as a single cause of action.

14. The trial court, in denying Chrysler and Colone costs under MCR 2.625, erred in determining that, notwithstanding the jury's verdict of no cause of action against them, they had not been prevailing parties because Mitsubishi had borne the costs of their defense pursuant to an indemnification agreement. On remand, the

trial court must reconsider Chrysler's and Colone's motion for costs. The trial court may disallow costs provided that it states its reasons in writing, MCR 2.625(A)(1).

Affirmed in part, reversed in part, and remanded.

1. PRODUCTS LIABILITY — AUTOMOBILES — SEAT BELTS — COMPARATIVE NEGLI-
      GENCE — DAMAGES.

   The provision in the Michigan Vehicle Code that states that the failure to wear a safety belt may be considered as evidence of negligence and may reduce by no more than five percent the recovery of damages arising out of the ownership, maintenance, or operation of a motor vehicle does not apply to a recovery of damages from an automobile manufacturer for products liability inasmuch as such liability does not arise out of the manufacturer's ownership, maintenance, or operation of a motor vehicle; damages recovered against an automobile manufacturer for products liability are subject to reduction by the full extent of comparative negligence, as provided by the comparative negligence statute that applies to all products liability actions (MCL 257.710e[6], 600.2949[1], now 600.2957-600.2960; MSA 9.2410[5][6], 27A.2949[1], now 27A.2957-27A.2960).

2. WITNESSES — FEES — PURSUIT OF INAPPLICABLE THEORIES.

   A trial court may exclude from the expert witness fee award fees relating to an expert's mistaken pursuit of an inapplicable theory.

3. COSTS — PREVAILING PARTIES — MULTIPLE CLAIMS.

   Alternative theories or claims arising out of the same transaction or occurrence are considered a single cause of action for purposes of awarding costs to a plaintiff who prevails on only one of the theories or claims (MCR 2.625[B][2]).

4. COSTS — PREVAILING PARTIES — MULTIPLE DEFENDANTS.

   For purposes of awarding costs in an action involving several defendants, a defendant for whom a judgment or dismissal is entered is deemed a prevailing party even though the plaintiff prevails over any remaining defendants in the action (MCR 2.625[B][3]).

*Shaner & Olsen, P.C.* (by *R. Stephen Olsen, V. Carl Shaner,* and *Robert John Daly*), for plaintiff.

*Dykema Gossett PLLC* (by *Craig L. John* and *Mary E. Royce*), for defendants.

Amici Curiae:

*John P. Raleigh* and *Susan L. Barnowski*, for Product Liability Advisory Council, Inc.

*Clark, Klein & Beaumont* (by *Dwight H. Vincent* and *J. Walker Henry*), for Michigan Manufacturers Association.

*Lee R. Franklin, Richard E. Shaw*, and *Jeffrey T. Meyers*, for Michigan Trial Lawyers Association.

Before: McDONALD, P.J., and MARKMAN and C. W. JOHNSON,* JJ.

MARKMAN, J. This products liability and wrongful death action was tried to a jury in 1992. In Docket No. 168384, Mitsubishi Motors Corporation (defendant) appeals as of right a judgment for plaintiff in the amount of $4,848,000. We affirm the judgment and reverse and remand for redetermination of damages to account for the jury's finding that plaintiff's decedent was ninety percent comparatively negligent. In Docket No. 183206, defendant appeals as of right and plaintiff cross appeals an order awarding costs to plaintiff pursuant to MCR 2.403(O) and MCR 2.625. We reverse and remand for assessment of plaintiff's taxable costs pursuant to MCR 2.625 only. In Docket No. 183208, Chrysler Corporation and John Colone Chrysler-Plymouth-Dodge, Inc (Colone), appeal as of right an order denying their motion for costs pursuant to MCR 2.625. We reverse and remand.

This matter arises out of a one-car rollover accident that occurred in 1988. The decedent purchased the car at issue, a Dodge Colt, about two months before the accident. At the time of the accident, it

---

* Circuit judge, sitting on the Court of Appeals by assignment.

had been driven approximately 6,300 miles. An eyewitness to the accident testified that he saw the car's left front tire "buckle out" at a forty-five-degree angle and that the car "lurch[ed] violently" to the left, proceeded onto the median, and flipped over several times before coming to rest in the median. He testified that there was nothing in the roadway that could have caused the accident. Plaintiff's experts testified that the left front steering knuckle was defective and that a fracture of the steering knuckle caused the accident. At the time of the accident, the decedent was wearing only the lap portion of her seat belt; the shoulder harness portion was found behind her back after the accident.

Plaintiff's complaint alleged negligence, breach of implied warranty, and breach of express warranty in connection with the design, manufacture, and warnings regarding the vehicle, its left front suspension system, and its seat belt system. Plaintiff abandoned the claims with respect to the seat belt system. The trial court granted defendants' motion for a directed verdict regarding the design defect and failure to warn claims at the close of defendants' case. The jury found no cause of action against Chrysler and Colone. It returned a verdict of $5,104,000 on the basis that defendant negligently manufactured the vehicle. The jury also found the decedent ninety percent comparatively negligent for failing to wear her seat belt shoulder harness. The trial court did not reduce the verdict by ninety percent because of the decedent's comparative negligence but by five percent pursuant to the mandatory seat belt usage provision of the Vehicle Code, MCL 257.710e(6); MSA 9.2410(5)(6). Thus, the net award to plaintiff was $4,848,000.

The main issue on appeal is the effect of the decedent's comparative negligence on the damage award. Two statutes arguably apply. MCL 600.2949(1); MSA 27A.2949(1)[1] provided:

> In all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

MCL 257.710e(6); MSA 9.2410(5)(6) provides:

> Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%.

Defendant claims that the verdict should have been reduced ninety percent pursuant to § 2949. It contends that § 710e is inapplicable to products liability actions because such actions do not arise out of the "ownership, maintenance, or operation of a motor vehicle." Whether § 710e applies to products liability actions is a question of law. This Court reviews questions of law de novo. *Vicencio v Ramirez*, 211 Mich App 501, 503; 536 NW2d 280 (1995).

In the context of the no-fault act, the Michigan Supreme Court and this Court have interpreted the

---

[1] This provision was repealed by 1995 PA 161, § 2, effective March 28, 1996. It has been replaced by MCL 600.2957-600.2960; MSA 27A.2957-27A.2960, which similarly provide that comparative negligence is to be reflected by a reduction in the amount of a verdict.

applicability of similar language to products liability actions. In *Citizens Ins Co of America v Tuttle*, 411 Mich 536, 544; 309 NW2d 174 (1981), the Court considered MCL 500.3135(2); MSA 24.13135(2), which abolished "tort liability arising out of the ownership, maintenance, or use within this state of a motor vehicle." It held at 545:

> Only persons who own, maintain or use motor vehicles can be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The non-motorist tortfeasor cannot be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle.

It cited with approval the comment to § 5 of the Uniform Motor Vehicle Accident Reparations Act at 546:

> [T]he only tort actions which are abolished are those which arise from the defendant's ownership, maintenance, or use of a motor vehicle. Among the potential tort actions thus retained by an automobile accident victim would be those against an automobile manufacturer for products liability or against a railroad in the case of an automobile-train collision.

In *Ryan v Ford Motor Co*, 141 Mich App 762, 768; 368 NW2d 266 (1985), which involved the interplay of worker's compensation benefits and no-fault benefits with respect to settlement of a products liability action, this Court stated:

> In the case at bar, the Ryans settled their products liability action against the vehicle manufacturer and dealership. These defendants were non-motorist tortfeasors whose liability did not arise from their ownership, maintenance or use of a motor vehicle. *Tuttle, supra.*

See also *Placek v Sterling Heights*, 405 Mich 638, 654, n 7; 275 NW2d 511 (1979); *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 31; 528 NW2d 681 (1995). These authorities clearly indicate that a products liability action is not an action "arising out of the ownership, maintenance, or operation of a motor vehicle" under § 710e.

Defendant cites *LaHue v General Motors Corp*, 716 F Supp 407 (WD Mo, 1989), a design defect products liability action arising out of an automobile accident in which the plaintiff was not wearing a seat belt. The *LaHue* court considered the applicability of a Missouri statute that provided:

> In any action to recover damages arising out of the ownership, common maintenance or operation of a motor vehicle, failure to wear a safety belt in violation of this section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this section may be admitted to mitigate damages, but only under the following circumstances:
>
> (1) Parties seeking to introduce [such] evidence . . . must first introduce expert evidence proving that a failure to wear a safety belt contributed to the injuries claimed by the plaintiff.
>
> (2) If the evidence supports such a finding, the trier of fact . . . may reduce the amount of the plaintiff's recovery by an amount not to exceed one percent of the damages awarded after any deductions for comparative negligence.

See, *LaHue*, at 410-411. The *LaHue* court held at 412:

> In [this statute,] the legislature established that the evidence of failure to use seat belts could not be used (except under certain circumstances to mitigate damages) "[i]n any action to recover damages arising out of *the ownership, common maintenance or operation* of a motor vehicle." (emphasis added) [sic]

> Conspicuously absent is any reference to the *design* or *construction* of a motor vehicle. Even the most liberal interpretation of the words "ownership," "common maintenance" and "operation" cannot stretch far enough to include design and construction. The plain meaning of the statute compels a conclusion that it was not intended to prevent evidence of failure to use seat belts in a products liability case.
>
> The absence of a restriction on such evidence in products liability cases cannot be presumed to be an oversight. Before the statute was enacted, there were many "crashworthiness" cases where the seat-belt defense was in dispute. . . . The Missouri legislature passed an unrelated amendment to its own seat-belt statute in 1988, after the comparative fault statute took effect, but made no effort to add products liability cases to the statute's scope.
>
> Acting within this context, the legislature must be presumed to know it could have included products liability cases in the statute if it intended to restrict evidence in those cases.

While *LaHue* is not binding on this Court, we find its reasoning persuasive and fully consistent with the Michigan authorities cited above. Section 710e does not reach products liability actions; rather, by its plain meaning, this provision is expressly limited to damages arising out of the "ownership, maintenance or operation of a motor vehicle." Accordingly, the trial court erred in applying § 710e rather than § 2949 to the jury verdict. We accordingly reverse and remand for determination of plaintiff's damages under § 2949. Our resolution of this issue makes it unnecessary for us to reach defendant's claims that § 710e is unconstitutional as applied to products liability actions and that the trial court erred in indicating in the jury instructions and special verdict form that the

decedent's comparative negligence, if any, would be deducted from any award to plaintiff.

Defendant next claims that the trial court erred in denying its motion for a directed verdict. Defendant contends that plaintiff failed to establish a prima facie case of negligent manufacture. Specifically, it claims that plaintiff failed to prove the existence of a manufacturing defect and a causal connection between such a defect and the decedent's death. In reviewing a trial court's ruling with regard to a motion for a directed verdict, this Court examines "the testimony and all legitimate inferences that may be drawn in the light most favorable to the [nonmoving party]." *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415-416; 443 NW2d 340 (1989).

In *Auto Club Ins Ass'n v General Motors Corp*, 217 Mich App 594, 604; 552 NW2d 523 (1996), this Court stated:

> A plaintiff bringing a products liability action must show that the defendant supplied a product that was defective and that the defect caused the injury. The plaintiff may establish its case by circumstantial and direct evidence. The plaintiff meets its burden when it demonstrates, by a reasonable probability, that the defect is attributable to the manufacturer and that such hypothesis is more probable than any other hypothesis reflected by the evidence. The plaintiff, however, is not obliged to eliminate all [other] possible causes of the accident. [Citations omitted.]

Here, plaintiff presented evidence that the steering knuckle was defective and that this defect caused the accident at issue. The physical condition of the car and the road and the testimony of an eyewitness supported these inferences. Plaintiff presented two

expert witnesses. Dr. David Felbeck[2] testified that there was a defect in the steering knuckle. Specifically he stated:

> The defect was some deficiency which allowed the vehicle under normal operating conditions to develop two fatigue cracks, one in each arm. The deficiency occurred from any or all of the following: a deficiency in design or a deficiency in manufacturing.

Dr. Daniel McVickar testified that it was his opinion that "this accident was initiated with fracture of the knuckle in the automobile, and that was the cause of loss of control and cause of the accident." On the basis of this evidence, plaintiff established a prima facie case of manufacturing defect. The trial court did not err in denying defendant's motion for a directed verdict.

Finally, defendant claims that the trial court erred in denying its motion for a new trial. In *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 410-411; 516 NW2d 502 (1994), this Court stated:

> Where a party's substantial rights are at stake, a trial court may grant a new trial for several reasons, including an excessive award of damages, jury misconduct, an irregularity or error of law in the proceedings, and a verdict against the great weight of the evidence. MCR 2.611(A)(1). The grant or denial of a new trial is reviewed for an abuse of discretion.

---

[2] Defendant challenges Dr. Felbeck's qualifications to testify as an expert witness. On the basis of the evidence of Dr. Felbeck's education and experience in the field of metallurgical failure analysis, we find no abuse of discretion in the trial court's decision to allow Dr. Felbeck to testify as an expert witness. See MRE 702; *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 412; 516 NW2d 502 (1994).

Defendant makes numerous claims that it contends singly or collectively justified the granting of a new trial. First, it claims that the verdict was against the great weight of the evidence because there was no evidence of a manufacturing defect. Here, the jury verdict was not against the great weight of the evidence because the plaintiff presented compelling evidence of a manufacturing defect, especially through the testimony of his experts.

Next, defendant claims that the trial court erred in allowing plaintiff to introduce into evidence two photographs of the decedent taken after the accident. Although the photographs were graphic, they were relevant to demonstrate injuries testified to by witnesses and bore on such issues as the decedent's conscious pain and suffering and whether the wearing of the seat belt shoulder harness would have affected the extent of the injuries. We do not find that the trial court abused its discretion in admitting this evidence. See *Knight v Gulf & Western Properties, Inc*, 196 Mich App 119, 133-134; 492 NW2d 761 (1992).

Defendant also claims that the trial court erred in allowing photographs of fractured iron from a learned treatise to be displayed to the jury during plaintiff's cross-examination of defendant's expert. Defendant failed to object below, and the display of these photographs to the jury complied with MRE 707, which governs the use of learned treatises for impeachment.

Defendant next claims that the trial court erred in failing to allow the jury to have "appropriate access" to Exhibit ZZ, an exemplar steering knuckle that its expert had purposely fractured. Although no testimony was presented regarding Exhibit ZZ, it was admitted into evidence by stipulation of the parties.

Plaintiff objected to allowing the jury to examine Exhibit ZZ during deliberations because of the lack of testimony regarding it. The trial court ultimately decided to allow the jury to examine it. It was delivered to the jury several hours after a majority of the other exhibits had been delivered; the jury continued to deliberate for approximately three hours after receiving Exhibit ZZ. Defendant fails to demonstrate how it was prejudiced by this delay. Nor does defendant provide any legal authority in support of its position that such a delay mandates a new trial. See *Winiemko v Valenti*, 203 Mich App 411, 415, 419; 513 NW2d 181 (1994).

Defendant next claims that the trial court erred in failing to allow the jury to listen to the audio tape of an eyewitness' statement. Defendant contends that the statement was more tentative than the eyewitness' testimony at trial. The trial court did not allow the jury to listen to the tape because when played on the court's equipment the voices on the tape "sound[ed] like chipmunks." However, the jury was provided with a transcript of the statement from which the jurors could compare the statement with the eyewitness' testimony at trial. Under these circumstances, the failure to play the tape, from which no inflections could be discerned, was not error requiring a new trial.

Defendant next claims that plaintiff's counsel improperly argued, during closing argument, that the decedent would have been killed even if she had been wearing her shoulder harness. This argument was improper because no evidence was presented at trial to support such an inference. The trial court gave a curative instruction to the jury:

> [Y]ou are to disregard any suggestion made in closing
> argument by plaintiff's counsel to the effect that even had
> Kimberly been wearing a properly adjusted seat belt, she
> would still have been fatally injured by contact with the
> vehicle's roof rail. No evidence to that effect has been sub-
> mitted in the case, and any such suggestion is predicated on
> conjecture and speculation.

The jury's finding that the decedent was ninety per-cent comparatively negligent for failure to wear her shoulder harness suggests strongly that defendant was not prejudiced by the improper argument of plaintiff's counsel.

Defendant next claims that damages for conscious pain and suffering may not be awarded in a wrongful death action and that, in any event, there was no evidence that the decedent suffered any conscious pain and suffering. The jury awarded plaintiff $100,000 for the decedent's conscious pain and suffering. MCL 600.2922(6); MSA 27A.2922(6) specifically provides that a jury in a wrongful death action may award "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death." "The existence of a decedent's conscious pain and suffering may be inferred from other evidence that does not explicitly establish the fact." *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 180; 475 NW2d 854 (1991). Here, defendant's own expert testified that the decedent's fatal head injury occurred "toward the very end" of the accident sequence and that she also suffered "significant injury" to the left arm and other minor injuries. The eyewitness testified that the vehicle flipped over multiple times before coming to rest. From this evidence,

the jury could have inferred reasonably that the decedent suffered conscious pain and suffering.

Defendant next claims several errors relating to jury instructions. First, it claims that the trial court erred in refusing to give the requested standard jury instruction regarding mitigation of damages. In *Byrne*, this Court stated at 182:

> The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court. In order for the court to give an instruction, sufficient evidence must be presented by the party to warrant it. We review instructions in their entirety and do not extract them piecemeal. Reversal is not required if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury.

Here, defendant presented a defense based on the decedent's comparative negligence and does not dispute that the trial court properly instructed the jury regarding this theory. Defendant presented no evidence that the decedent should have, but did not, mitigate her damages during the accident sequence. Accordingly, we find no error in the trial court's denial of defendant's request for an instruction regarding mitigation of damages. Second, because the issues raised in defendant's proposed special instructions were adequately covered by the jury instructions given, we find no abuse of discretion in the court's refusal to give defendant's proposed special instructions. Third, defendant offers no authority to support its claims of alleged instructional errors relating to inconsistent terminology, modification of the damage instruction, recoverability of future damages, and the reading of the special verdict form. This

Court need not address such unsupported claims. See *Winiemko, supra,* at 415, 419.

Defendant next claims that the jury award of $5 million for loss of the decedent's services, gifts, society, and companionship was excessive. We review trial court rulings regarding motions for remittitur for abuse of discretion. *Byrne* at 183. A reviewing court generally will not disturb a jury award for loss of society and companionship "if it is within the limits of what reasonable minds would consider just compensation." *In re Claim of Carr,* 189 Mich App 234, 238; 471 NW2d 637 (1991). Plaintiff presented numerous witnesses who testified about their loss of society and companionship of the decedent—their twenty-two-year-old daughter and sister. Defendant neither objected to these witnesses below nor engaged in cross-examination of them. We find no abuse of discretion in the trial court's denial of defendant's motion for remittitur.

Finally, defendant claims that the jury verdict was inconsistent in finding that defendant's negligence proximately caused the decedent's injuries but that defendant's breach of implied warranty did not proximately cause her injuries. In *Granger v Fruehauf Corp,* 429 Mich 1, 9; 412 NW2d 199 (1987), the Court stated:

> [I]t is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside.

The jury's conclusions that defendant's negligent manufacture of the vehicle proximately caused the fatal accident but that its breach of implied warranty did

not proximately cause it were not so logically or legally inconsistent that they are irreconcilable. See *Granger, supra; Clark v Seagrave Fire Apparatus, Inc,* 170 Mich App 147; 427 NW2d 913 (1988). The jury could have concluded, albeit for reasons known only to the jury, that the cause of the decedent's accident was defendant's negligence, not the breach of implied warranty of fitness. We accordingly find no error in the trial court's denial of defendant's motion for a new trial on this basis.

For these reasons, we affirm the judgment in Docket No. 168384 but reverse the determination of damages and remand for recalculation of damages pursuant to MCL 600.2949; MSA 27A.2949.

In Docket No. 183206, defendant appeals as of right the trial court's award of costs to plaintiff. Defendant claims that the trial court should have apportioned the claimed costs because plaintiff pursued multiple claims but prevailed on only one claim and that the court erroneously failed to do so. Plaintiff cross appeals, claiming that the trial court abused its discretion in failing to award certain requested expert fees and attorney fees.

Plaintiff moved for taxable costs and attorney fees pursuant to MCR 2.403(O) and MCR 2.625. The trial court awarded plaintiff $216,022.08 in attorney fees and $54,983.78 in taxable costs against defendant. MCR 2.403(O)(1) states in pertinent part:

> If a party has rejected an evaluation and the action proceeds to trial, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation.

MCR 2.403(O)(3) states that a verdict (after adjustment by adding "assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the mediation evaluation") is more favorable to a defendant if it is "more than 10 percent below the evaluation." The mediation evaluation in the present matter was $1.2 million; plaintiff accepted and defendants rejected this evaluation. In light of our determination above that the verdict is to be reduced by the jury's finding that the decedent was ninety percent comparatively negligent, the verdict at issue was in the amount of $510,400, not $4,848,800 as the trial court assumed at the time it made the cost award at issue. Because the verdict was more favorable to defendant than the mediation evaluation, plaintiff is not entitled to sanctions under MCR 2.403. Accordingly, we reverse the award of costs to plaintiff and remand for reconsideration of plaintiff's motion for taxable costs under MCR 2.625 only.[3]

We will briefly address two issues raised by the parties that relate to taxable costs and are likely to be at issue on remand. This Court reviews trial court rulings on motions for costs under MCR 2.625 for abuse of discretion. *Ullery v Sobie*, 196 Mich App 76, 82-83; 492 NW2d 739 (1992). In the cross appeal, plaintiff contends that the trial court abused its discretion by excluding from the fee award fees relating to one of plaintiff's experts for a period during which the

---

[3] MCR 2.625 generally refers to the taxation of costs by a prevailing party and is unrelated to the mediation context. MCR 2.403(O) enables a prevailing party to recover both taxable costs as well as reasonable attorney fees incurred as a result of the other party's rejection of the mediation. MCR 2.625, on the other hand, does not allow for an award of attorney fees but does not limit the recovery of taxable costs to those incurred as a result of the rejected mediation.

expert pursued a mistaken theory of defect. We find no abuse of discretion in the trial court's decision to so limit the expert fees.

Defendant claims that costs awarded to plaintiff should have been apportioned because plaintiff pursued multiple claims but only prevailed on one claim against defendant, but that the trial court erroneously failed to apportion the costs. MCL 2.625(B)(2) states:

> In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed costs for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party.

The author's comment regarding MCR 2.625(B)(2) in 3 Martin, Dean & Webster, Michigan Court Rules Practice, pp 723-724 states:

> The guiding principle is this—that costs are to be allowed to the prevailing party with reference to each different cause of action. When there is only a single cause of action in a case, the party who prevails on the entire record is deemed the prevailing party. Thus, if there is only a single cause of action and the plaintiff recovers on any theory or count, he is the prevailing party and is entitled to costs for the entire action, even those related to theories or counts upon which he did not succeed.
>
> *   *   *
>
> The rule does involve a problem of interpretation, depending upon the definition used for "cause of action". For example, if a plaintiff joins together claims for negligence and breach of warranty, relating to a single injury, is there only a single cause of action in the case, or has the plaintiff stated different causes of action? If there is only a single cause of action, plaintiff can prevail on one theory,

lose on the other, and still be the prevailing party on the entire record. But if these are different causes of action, within the meaning of MCR 2.625(B)(2), the plaintiff will be allowed costs only as to the cause upon which he prevailed, and the defendant will recover costs upon the other cause of action.

Traditionally the definition of "cause of action" in Michigan has been broad and functional, in terms of the transaction or occurrence giving rise to the claim for relief. See Authors' Comment to MCR 2.203. Thus, where alternative theories or claims might be stated, if they arise out of the same transaction or occurrence, there is only a single cause of action, even though each alternative claim or theory might involve technically different liabilities and duties and slightly different factual elements. This definition of cause of action appears to serve the purposes of MCR 2.625(B)(2). Thus, in the example stated above, there is only a single cause of action in the case. If recovery by the plaintiff on any one of the claims would bar a recovery on all of the other claims, it should be concluded that there was only a single cause of action for purposes of allowing costs. If, however, recovery on one of the claims would not bar recovery on the others, different causes of action are involved, within the meaning of MCR 2.625(B)(2), and costs should be allowed to the prevailing party in each cause.

Here, plaintiff's complaint alleged alternative theories of liability arising out of the same transaction. Thus, the trial court correctly found that there was essentially a single cause of action. Plaintiff prevailed and accordingly "is entitled to costs for the entire action, even those related to theories or counts upon which he did not succeed." Therefore, we find no abuse of discretion in the trial court's failure to apportion the costs awarded to plaintiff.

In Docket No. 183208, defendants Chrysler and Colone claim that the trial court erred in determining that they were not prevailing parties entitled to taxa-

ble costs under MCR 2.625. The determination whether a party is a "prevailing party" under MCR 2.625 is a question of law. This Court reviews legal questions de novo. *Vicencio, supra* at 503. Here, the trial court denied Chrysler's and Colone's motion for costs on the basis that they were not prevailing parties. It noted that defendant in fact bore the costs of litigating this matter for all three defendants pursuant to an indemnification agreement.

MCR 2.625(A)(1) states:

> Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

MCR 2.625(B)(3) states:

> If there are several defendants in one action, and judgment for or dismissal of one or more of them is entered, those defendants are deemed prevailing parties, even though the plaintiff ultimately prevails over the remaining defendants.

A plain reading of this court rule indicates that Chrysler and Colone are "deemed prevailing parties" under MCR 2.625(B)(3) because a judgment of no cause of action was entered against them. The trial court erred in finding that they were not prevailing parties. Accordingly, we remand for reconsideration of Chrysler's and Colone's motion for costs. However, on remand, the trial court may disallow costs to these defendants, despite the fact that they were prevailing parties, provided that it sets forth its reasons in writing pursuant to MCR 2.625(A)(1). In that event, it will have to decide whether the fact that defendant bore

all the costs of the defense pursuant to an indemnification agreement makes it appropriate to disallow costs to Chrysler and Colone. In their briefs on appeal, both parties briefly address the propriety of the trial court disallowing costs to Chrysler and Colone on this basis. However, because the trial court based its decision to disallow costs on its finding that Chrysler and Colone were not "prevailing parties," this issue is not properly before us. Further, plaintiff makes policy arguments based on the mediation sanctions rule, which is no longer at issue here as determined above. We believe that this is a difficult issue and that the parties and the trial court should have the opportunity to squarely address it in light of our determination that plaintiff is not entitled to costs under MCR 2.403(O) but only under MCR 2.625.

For these reasons, we affirm the judgment but reverse the order reducing the verdict pursuant to § 710e and remand for application of § 2949, reverse the order awarding costs to plaintiff and remand for assessment of costs pursuant to MCR 2.625 only, and reverse the order denying Chrysler's and Colone's motion for costs and remand for reconsideration. We do not retain jurisdiction.