Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 30, 2004**

PATRICK MANN, SR., AND GAYLE MANN,
INDIVIDUALLY and as next friend of
PATRICK MANN, JR., MINOR,

    Plaintiffs-Appellees,

v                                     No. 122845

ST. CLAIR COUNTY ROAD COMMISSION,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

The sole issue before the Court is whether the safety belt use statute's cap on the reduction of damages, MCL 257.710e(6), applies when suit is brought against a county road commission under the highway exception to governmental immunity. MCL 257.710e(6) provides that a plaintiff's damages arising out of the ownership, maintenance, or operation of a motor vehicle can be reduced by no more than five percent because of a plaintiff's failure to wear a safety belt. We adopt Justice Boyle's concurrence in *Klinke v Mitsubishi Motors Corp,* 458 Mich 582; 581 NW2d

272 (1998), and hold that MCL 257.710e(6) by its express terms limits application of its cap on the reduction of damages to cases arising under the no-fault act, MCL 500.3101 *et seq.* Here the plaintiffs' claim is not brought under the no-fault act; instead, the suit is based on the civil liability of a county road commission for its maintenance of a highway under the highway exception to governmental immunity, MCL 691.1402. Thus, the safety belt statute's cap on reduction of damages does not apply. We reverse the decisions of the Court of Appeals and the trial court and remand to the trial court for entry of an order consistent with this opinion.

### FACTS & PROCEDURAL HISTORY

On October 26, 1997, Patrick Mann, Sr., lost control of his pickup truck after he left the roadway and attempted to bring his vehicle back onto the paved surface. Mann collided with a tree on the side of the roadway, resulting in injures to both himself and Patrick Mann, Jr. There is a dispute over whether the Manns were wearing their safety belts during the accident.

Patrick Mann, Sr., and Gayle Mann, for herself and as next friend of Patrick Mann, Jr., a minor, brought suit, alleging that the accident was caused by a roadway "edge drop," and that defendant, the county road commission, is

2

liable under the highway exception to governmental immunity for failing to keep the roadway in reasonable repair.[1] Defendant seeks to offer at trial testimony of a biomechanical expert that the vehicle occupants (plaintiffs) were not wearing safety belts at the time of the accident and that they would have escaped with minor, superficial injuries had they been wearing safety belts.

Before trial, defendant brought a motion in limine, asking that the circuit court enter an order holding that the safety belt statute's cap on the reduction of damages, MCL 257.710e(6), does not apply. If the safety belt statute's cap were to apply, then plaintiffs' negligence in failing to wear a safety belt could reduce their damages by no more than five percent. Defendant sought to have plaintiffs' damages reduced by more than that amount under common-law comparative negligence. Following argument on defendant's motion in limine, the trial court denied defendant's motion. The trial court declined to extend the rationale of *Klinke*, beyond a products liability action, and held that the safety belt statute's cap on reduction of damages does apply.

---

[1] For purposes of this appeal, we accept plaintiffs' allegations as true.

3

The Court of Appeals granted defendant's application for leave for an interlocutory appeal and affirmed. 254 Mich App 86; 657 NW2d 517 (2002). This Court granted leave to appeal, limiting the grant to "whether the limitation on the reduction of damages based on a plaintiff's negligence established by MCL 257.710e(6) applies in this case." 468 Mich 942 (2003).

### ANALYSIS

The issue before us is whether the safety belt statute's cap on the reduction of damages, MCL 257.710e(6), applies to a suit against a county road commission brought under the highway exception to governmental immunity, MCL 691.1402. This case presents a question of statutory interpretation, which is reviewed de novo. *Stozicki v Allied Paper Co, Inc,* 464 Mich 257, 263; 627 NW2d 293 (2001).

### A

Before 1985, evidence of a plaintiff's failure to use a safety belt was not admissible in any tort action. *Romankewiz v Black,* 16 Mich App 119; 167 NW2d 606 (1969). In 1985, the Legislature adopted a safety belt law, MCL 257.710e, requiring front safety passengers in automobiles to wear safety belts and providing that failure to use a safety belt "may be considered evidence of negligence and

4

may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle." MCL 257.710e(6). The safety belt law limits the amount by which recovery for damages may be reduced to no more than five percent of the damages: "such negligence shall not reduce the recovery for damages by more than five percent." MCL 257.710e(6).

Two years later, in deciding an automobile products liability action, this Court held that under the common-law a plaintiff's failure to wear a safety belt could be used at trial for purposes of comparative negligence. *Lowe v Estate Motors Ltd,* 428 Mich 439; 410 NW2d 706 (1987). In *Lowe* the accident occurred before the effective date of MCL 257.710e, and the Court's decision was not based on the statute.

As a result, in a tort suit there are two alternative grounds for admitting evidence of the failure to use a safety belt—the safety belt statute or common-law comparative negligence.[2] The primary difference between the

---

[2] In this case, if the evidence of plaintiffs' failure to wear safety belts were not admitted under the safety belt statute, it would be admitted under the common law for the purpose of comparative negligence. MCL 691.1412 of the governmental immunity act provides that "[c]laims under

two is that when evidence of the failure to use a safety belt is admitted under the safety belt statute, there is a five percent cap on the reduction of damages; when evidence of the failure to use a safety belt is admitted under common-law comparative negligence, the safety belt statute and its cap do not apply.

B

The question here is whether the safety belt statute's cap on the reduction of damages, MCL 257.710e(6), applies to a suit brought under the highway exception to governmental immunity, MCL 691.1402.

The safety belt statute, MCL 257.710e, requires the use of safety belts in an automobile.[3]  It allows evidence of the failure to use a safety belt to be admitted in court

---

(…continued)
this act are subject to all of the defenses available to claims sounding in tort brought against private persons."

[3] MCL 257.710e(3) states:

Each driver and front safety passenger of a motor vehicle operated on a street or highway in this state shall wear a properly adjusted and fastened safety belt, except that a child less than 4 years of age shall be protected as required in section 710d. If there are more passengers than safety belts available for use, and all safety belts in the motor vehicle are being utilized in compliance with this section, the driver of the motor vehicle is in compliance with this section.

6

to prove comparative negligence, while limiting the reduction for recovery of damages arising out of the ownership, maintenance, or operation of a motor vehicle to no more than five percent:

> Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than five percent. [MCL 257.710e(6).]

We hold that the safety belt statute's cap on the reduction of damages is applicable only to tort actions brought under the no-fault act, MCL 500.3101 *et seq.*

By its own terms, § 710e(6) is limited to "damages arising out of the ownership, maintenance, or operation of a motor vehicle." A loss involving the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle is a "motor vehicle accident" under the no-fault act.[4] Tort liability arising from the ownership,

---

[4] MCL 500.3101(2)(f) provides:

> "Motor vehicle accident" means a loss involving the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle regardless of whether the accident also involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle.

maintenance, or use of a motor vehicle within Michigan has been abolished, allowing for certain exceptions within MCL 500.5135(3).[5]   Thus, the cap on reduction of damages for

_____

(…continued)
The no-fault act applies to motor vehicle accidents occurring on or after October 1, 1973.  MCL 500.3179.

[5] MCL 500.3135(3) provides:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 was in effect is abolished except as to:

> (a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer that harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

> (b) Damages for noneconomic loss as provided and limited in subsections (1) and (2).

> (c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured.

> (d) Damages for economic loss by a nonresident in excess of the personal protection insurance benefits provided under section

**8**

failure to wear a safety belt, § 710e(6), can only apply in those limited tort suits allowed under the no-fault act.[6] As Justice Boyle stated in her concurrence in *Klinke, supra* at 594 "[t]he fact that the safety belt statute tracks the language of the no-fault act demonstrates the Legislature's clear intent to apply the five-percent limitation on reduction of damages for a plaintiff's negligence within the context of the no-fault act."

The question in this case is whether the safety belt statute's cap on the reduction of damages applies when suit is brought against a county road commission under the

---

(…continued)

3163(4). Damages under this subdivision are not recoverable to the extent that benefits covering the same loss are available from other sources, regardless of the nature or number of benefit sources available and regardless of the nature or form of the benefits.

(e) Damages up to $500.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (4).

[6] Contrary to the dissent's assertion, our holding is not based solely on the similarity of language in the safety belt statute and the no-fault act. Rather, as explained above, we recognize that the terms of the safety belt statute limit its applicability to motor vehicle accidents under the no-fault act. Thus, the only tort suits to which the safety belt statute will apply are those allowed under the no-fault act.

highway exception to governmental immunity.  We hold that because the plaintiff's suit was not brought under the no-fault act, the safety belt statute's cap on the reduction of damages, § 710e(6), does not apply.[7]

C

The safety belt statute's cap on the reduction of damages is also inapplicable in this case because the plaintiffs do not allege that their damages arose out of the "ownership, maintenance, or operation of a motor vehicle."  Rather, plaintiffs allege that the accident and their damages were caused by a roadway "edge drop," and

---

[7] Because we conclude that this cap only applies to cases arising under the no-fault act, and that since this case does not arise under the no-fault act the safety belt statute's cap on the reduction of damages does not apply, we do not address whether the application of the cap in this case would violate the Title-Object Clause.

But we note that in its analysis the Court of Appeals applied the wrong test to determine whether the Title-Object Clause was violated.  The Court of Appeals panel reasoned that applying the safety belt cap in a suit for a defective highway did not violate the scope of the title of the Vehicle Code because "there is a natural correlation or connection between governmental liability for failing to maintain a highway in reasonable repair and the Michigan Vehicle Code, which governs the operation of vehicles on those same public highways."  254 Mich App 99.  The proper test for determining whether a statute violates the Title-Object Clause is whether it contains "subjects diverse in their nature and having no necessary connection," *People ex rel Drake v Mahaney,* 13 Mich 481, 494-495 (1865), *Pohutski v City of Allen Park,* 465 Mich 675, 691; 641 NW2d 219 (2002), not whether there is a "natural correlation or connection."

**10**

that defendant is liable under the highway exception to governmental immunity for failing to keep the roadway in reasonable repair.  Plaintiffs allege that their damages arose from the failure to keep the roadway in reasonable repair, not from the ownership, maintenance, or operation of a motor vehicle.

In its opinion, the Court of Appeals panel held that the safety belt statute's cap on the reduction of damages applied here, in a suit under the highway exception to governmental immunity, because the damages did arise out of the operation of a motor vehicle.[8]  This is an incorrect

---

[8] The Court of Appeals opinion stated:

> Subsection 710e(6) does not provide that "liability" must arise out of the operation of a motor vehicle, but rather that "damages" must so arise, and subsection 710e(6) does not provide that damages must arise out of the operation of a particular party's motor vehicle, but rather only that the damages arise out of the operation of a motor vehicle.  Therefore, the clear language of subsection 710e(6) required only that plaintiffs suffered damages arising out of the operation of a motor vehicle as alleged here.  If plaintiffs had not been operating a motor vehicle, there would not have been an accident, injuries, and damages.  The operation of a motor vehicle was a necessary component giving rise to plaintiffs' cause of action, and there was a nexus between their damages and the operation of a motor vehicle.  [254 Mich App 86, 103; 657 NW2d 517 (2002).]

**11**

interpretation of "damages arising out of the ownership, maintenance, or operation of a motor vehicle."

This Court has construed almost identical language, "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle," as referring to liability *caused by* the ownership, maintenance, or use of a motor vehicle. *Citizens Ins Co of America v Tuttle,* 411 Mich 536, 544; 309 NW2d 174 (1981). In *Tuttle,* the liability arose from the defendant's improper keeping of his cow, not the ownership, maintenance, or use of a motor vehicle. Here the damages arose from the improper maintenance of the highway, not the ownership, maintenance, or operation of a motor vehicle.

This interpretation is in accord with the Court of Appeals decision in *Klinke v Mitsubishi Motors Corp,* 219 Mich App 500; 556 NW2d 528 (1996), written by Judge Markman, and with Justice Boyle's concurring opinion in *Klinke*, 458 Mich 595 n 5, which recognized that there "[t]he only damages 'arising out of the ownership, maintenance, or operation of a motor vehicle' in this litigation are the damages caused by plaintiff's fault. To the extent that plaintiff's damages were caused by a product defect, they do not arise out of 'ownership,

**12**

maintenance, or operation.'  Thus, the five-percent cap would not apply."

In *Klinke* the Court of Appeals concluded that the five percent cap on the reduction of damages for failure to wear a safety belt found in the Vehicle Code does not apply to products liability actions against automobile manufacturers. "[B]y its plain meaning, this provision is expressly limited to damages arising out of the ownership, maintenance or operation of a motor vehicle.'"  219 Mich App 509.  "Conspicuously absent is any reference to the *design or construction* of a motor vehicle.  Even the most liberal interpretation of the words 'ownership,' 'common maintenance' and 'operation' cannot stretch far enough to include design and construction."  *Id.*, quoting *LaHue v Gen Motors Corp,* 716 F Supp 412 (WD Mo, 1989).

Likewise, even the most liberal interpretation of the words "ownership," "common maintenance," and "operation" cannot stretch far enough to include maintenance of a highway.  Plaintiffs here are attempting to recover damages arising out of the road commission's failure to maintain the highway; they are not attempting to recover damages arising out of "the ownership, maintenance, or operation of a motor vehicle."  In other words, plaintiffs are not seeking damages for the "operation of a motor vehicle";

**13**

rather, they are seeking damages for the road commission's failure to maintain the highway in a condition reasonably safe and fit for travel.

Because the plaintiffs' suit is based on the civil liability of a county road commission for its maintenance of a highway, the safety belt statute's cap on reduction of damages does not apply.

### CONCLUSION

The trial court erred in denying defendant's motion in limine to preclude application of the five percent damage reduction cap in MCL 257.710e(6). We reverse the decisions of the Court of Appeals and the trial court, and remand the case to the trial court for entry of an order granting defendant's motion, consistent with this opinion.

> Elizabeth A. Weaver
> Maura D. Corrigan
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

14

                    S T A T E   O F   M I C H I G A N

                           SUPREME COURT


PATRICK MANN, SR., and GAYE MANN,
individually and as next friend of
PATRICK MANN, JR., minor,

       Plaintiffs-Appellees,

v                                                    No. 122845

ST. CLAIR COUNTY ROAD COMMISSION,

       Defendant-Appellant.
_____

KELLY, J. (*dissenting*).

       I would find that the five percent cap on damage

reduction for failure to wear one's safety belt applies to

a suit brought under the highway exception to governmental

immunity.   This would be consistent with my dissenting

opinion in *Klinke v Mitsubishi Motors Corporation*, 458 Mich

582; 581 NW2d 272 (1998).

                       Statutory Analysis

       The safety belt statute provides:

            Failure to wear a safety belt in violation
       of this section may be considered evidence of
       negligence and may reduce the recovery for
       damages arising out of the ownership,
       maintenance, or operation of a motor vehicle.
       However, such negligence shall not reduce the
       recovery for damages by more than 5%. [MCL
       257.710e(6).]

The majority holds that, in an action pleaded in avoidance of governmental immunity premised on the highway exception, plaintiff's damages do not "arise out of the ownership, maintenance, or operation of a motor vehicle." It bases this conclusion on the fact that the Legislature used similar language in the no-fault act.[1] That act provides in pertinent part:

> Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle . . . is abolished . . . . [MCL 500.3135(3).]

Although similarity exists in the language of the two statutes, it is deceptive and should not be taken to indicate that the Legislature intended identical results when applying them. A comparison of the two reveals that they are not identical. The difference in the Legislature's choice of language is telling.

---

[1] The majority maintains that its holding is not based solely on the similarity in the language of the safety belt statute and the no-fault act. It insists instead that "the terms of the safety belt statute limit its applicability to motor vehicle accidents under the no-fault act." *Ante* at 9 n 6. However, the safety belt statute makes no reference to the no-fault act. Therefore, despite its assertion to the contrary, the majority bases this conclusion solely on the fact that the Legislature used similar language in the no-fault act.

2

The no-fault act refers to "liability arising from the ownership, maintenance, or use . . . of a motor vehicle . . . ." The safety belt law refers to "damages arising out of the ownership, maintenance, or operation of a motor vehicle." Here, plaintiffs' damages arose out the operation of the vehicle. The majority maintains that plaintiffs are not seeking damages "for" the operation of a motor vehicle. *Ante* at 14. However, that misconstrues the safety belt statute. By definition, the liability arising from an act and the damages caused by it are not identical. I agree with the Court of Appeals analysis:

> [MCL 257.710e(6)] does not provide that "liability" must arise out of the operation of a motor vehicle, but rather that "damages" must so arise, and subsection 710e(6) does not provide that damages must arise out of the operation of a *particular party's* motor vehicle, but rather only that the damages arise out of the operation of *a* motor vehicle. Therefore, the clear language of subsection 710e(6) required only that plaintiffs suffered damages arising out of the operation of a motor vehicle as alleged here. If plaintiffs had not been operating a motor vehicle, there would not have been an accident, injuries, and damages. The operation of a motor vehicle was a necessary component giving rise to plaintiffs' cause of action, and there was a nexus between their damages and the operation of a motor vehicle. [254 Mich App 86, 103; 657 NW2d 517 (2002) (emphasis added).]

The premise upon which the majority builds its analysis is that the safety belt statute applies only in conjunction with the no-fault act. MCL 500.3135. I

3

continue to believe that the Legislature intended the broadly based, tort damage recovery limitation of the safety belt statute to be applicable in any action involving a motor vehicle accident.

At common law, the failure to use a safety belt was not admissible to prove contributory negligence. When the safety belt statute was enacted, it was intended as a punishment for plaintiffs who did not use their safety belts, reducing their available damages. The statute encouraged drivers to wear their safety belts. By contrast, the purpose of the five percent cap was "to prevent the injured party from recovering substantially less based solely on the failure to wear a safety belt," as I noted in *Ullery v Sobie*, 196 Mich App 76, 80; 492 NW2d 739 (1992). Similarly, as the Court of Appeals observed in this case[2] and in *Thompson v Fitzpatrick*,[3] the five percent cap was "intended by the Legislature to protect plaintiffs against drastic reduction in damage awards." *Id.* at 8.

The Legislature apparently concluded that limiting recovery for those who fail to wear safety belts would

---

[2] 254 Mich App 103-104.

[3] 199 Mich App 5; 501 NW2d 172 (1993).

4

further both goals.  The Court of Appeals agreed with this observation:

> The Senate Bill Analysis regarding supporting arguments for the 1985 amendment of MCL 257.710e indicated that "seat belt use saves lives and reduces the number and severity of injuries. Experience has shown that mandatory seat belt laws produce a significant and lasting increase in the use of seat belts, even when enforcement is relaxed." Senate Analysis, SB 6, February 26, 1985.  It is abundantly clear that the Legislature intended to encourage all drivers to wear their seat belts for purposes of public safety and to limit attacks on damage awards based on comparative negligence where a defendant is negligent. [254 Mich App 104-105.]

Thus, the more legal actions in which the damage cap applies, the more effective the act will be. The fact that the state of the law has changed does not retroactively alter the Legislature's intent in passing the safety belt statute.

The majority acts to frustrate this legislative intent.  The language of the safety belt statute reduces one's damages by five percent.  Nothing suggests that the Legislature wanted to reduce damages by five percent in a two-car accident, but set no limit where only one car was involved.  Absent some indication of such intent, it is illogical to conclude that the Legislature intended such disparate results from the same negligence, failing to wear a safety belt.

5

For example, if a motorist whose only negligence is his failure to wear a safety belt is hit by a truck, his damages will be reduced by five percent under the statute. However, if, instead, the accident involves a negligent bicyclist, applying the majority's interpretation, the same injured motorist could experience a much greater damage reduction for failing to wear a safety belt.

The Legislature enacted a standard of care, the wearing of safety belts, that carries a limited penalty for its violation. The majority frustrates the Legislature's intent and limits its power by finding a clear indication of intent that the statute be applied only to no-fault cases. This is despite the fact that the safety belt statute itself contains no such limitation. The majority extrapolates the limitation from the Legislature's use of the same string of words in the no-fault act as in the Vehicle Code. I interpret the use of the phrase "ownership, maintenance or operation of a motor vehicle" as a convenient description for the common uses of motor vehicles, not a limitation of the damage cap to no-fault claims.

## Conclusion

I would find that the five percent cap on damages reduction for failure to wear a safety belt applies to a

suit brought under the highway exception to governmental immunity. It is apparent that the intent of the Legislature in passing the safety belt act was twofold: to foster public safety and to limit attacks on damage awards based on a motorist's comparative negligence in failing to wear a safety belt. Subsequent changes in the law cannot affect the Legislature's intent at the time that the cap was enacted. Applying the cap only to no-fault cases defies the Legislature's intent and reads into the statute a limitation not written there.

Accordingly, I would affirm the decision of the Court of Appeals and of the trial court.

Marilyn Kelly
Michael F. Cavanagh