MANN v ST CLAIR COUNTY ROAD COMMISSION

Docket No. 226443. Submitted January 9, 2002, at Detroit. Decided
    November 15, 2002, at 9:05 A.M. Leave to appeal sought.

Patrick Mann, Sr., and Gaye Mann, individually and as next friend of
    Patrick Mann, Jr., a minor, brought an action in the St. Clair Circuit
    Court against the St. Clair County Road Commission, seeking dam-
    ages for injuries sustained by Patrick Mann, Sr., and Patrick Mann,
    Jr., as a result of the defendant's alleged negligent maintenance of a
    roadway. The defendant brought a motion in limine seeking to pre-
    clude application of the five percent damage reduction cap author-
    ized by subsection 710e(6) of the Michigan Vehicle Code, MCL
    257.710e(6), that applies in actions where the injured parties were
    allegedly not wearing safety belts at the time of a motor vehicle
    accident. The court, Peter E. Deegan, J., denied the motion. The
    defendant appealed from that order by leave granted.

    The Court of Appeals held:

    1. Language in the title of the vehicle code to the effect that it is
    an act "to provide for the regulation and use of streets and high-
    ways" allows application of the damage reduction cap against the
    defendant in an action brought against a governmental unit under
    the highway exception to governmental immunity, MCL 691.1402.
    Application of the damage reduction cap in this matter does not
    violate the Title-Object Clause of the Michigan Constitution, Const
    1963, art 4, § 24. The title of the vehicle code is not framed in a
    manner that precludes application of subsection 710e(6) to the lia-
    bility of road commissions where streets and highways are not
    kept in reasonable repair.

    2. The clear language of subsection 710e(6) requires only that the
    plaintiffs have suffered damages arising out of the operation of a
    motor vehicle, as alleged here. There was a nexus between the
    plaintiffs' damages and the operation of a motor vehicle. The dam-
    age reduction cap is not limited in its operation to situations
    involving a defendant's liability for operating a motor vehicle.

    Affirmed.

    MARKEY, J., dissenting, stated that the statutory five percent cap
    on the reduction for comparative negligence for failure to use
    safety belts contained in subsection 710e(6) of the Michigan Vehi-

cle Code, MCL 257.710e(6), does not apply in this action under the
highway exception to governmental immunity, MCL 691.1402. The
title of the vehicle code does not mention the liability of road com-
missions and provides no notice that a road commission may face
liability thereunder. The use of the phrase "to provide for the regu-
lation and use of streets and highways" in the title of the vehicle
code is insufficient under the Title-Object Clause, Const 1963, art 4,
§ 24, to create or reduce a public road commission's liability. The
order of the trial court should be reversed and the matter should
be remanded.

GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — COMPARATIVE NEGLIGENCE
    — FAILURE TO USE SAFETY BELTS.
    Personal injury damages recoverable by a motorist in an action
    against a governmental entity for the negligent maintenance of a
    highway may, pursuant to a provision of the Michigan Vehicle
    Code, be reduced by no more than five percent for the motorist's
    comparative negligence in failing to use safety belts; such applica-
    tion of the vehicle code damage reduction cap does not result in a
    violation of the Title-Object Clause of the state constitution (Const
    1963, art 4, § 24; MCL 257.710e[6], 691.1402).

*Moss & Colella, P.C.* (by *David M. Moss*) (*Som-
mers, Schwartz, Silver & Schwartz, P.C.*, by *Patrick
Burkett*, of counsel), for the plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander
Ploeg*) and *Highland & Zanetti, P.C.* (by *R. Michael
John*), for the defendant.

Before: HOOD, P.J., and MURPHY and MARKEY, JJ.

MURPHY, J. Defendant St. Clair County Road Com-
mission appeals by leave granted the trial court's
order denying defendant's motion in limine to pre-
clude application of the five percent damage reduc-
tion cap authorized by MCL 257.710e(6)[1] in circum-
stances where the injured parties were allegedly not

---

[1] Subsection 710e(6) provides that the "[f]ailure to wear a safety belt in
violation of this section may be considered evidence of negligence and
may reduce the recovery for damages arising out of the ownership, main-

wearing safety belts at the time of the accident. We affirm.

Under the controlling language of *Klinke v Mitsubishi Motors Corp*, 458 Mich 582; 581 NW2d 272 (1998), and principles governing analysis of issues under the Title-Object Clause, Const 1963, art 4, § 24, any comparative negligence of plaintiffs, if established at trial, is subject to application of the statutory five percent damage reduction cap.[2] In this action involving the alleged liability of defendant road commission under the highway exception to governmental immunity, MCL 691.1402,[3] application of the cap under subsection 710e(6) does not violate the Michigan Constitution's Title-Object Clause.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiffs[4] allege that Patrick Mann, Sr., and Patrick Mann, Jr., suffered various injuries after their vehicle

---

tenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%."

[2] Defendant sought to avoid application of MCL 257.710e(6) presumably so that defendant could present testimony concerning the degree plaintiffs' failure to use safety belts exacerbated their injuries and perhaps obtain a greater percentage reduction in damages that a jury would award.

[3] Subsection 2(1) provides, in part:

Except as otherwise provided in section 2a, each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

[4] Plaintiff Gaye Mann is next friend of her son, Patrick Mann, Jr., and has a loss of consortium claim.

"slipped" off the edge of the roadway and onto the shoulder. Plaintiffs represent that Mann, Sr., had difficulty returning the vehicle to the roadway because of a "significant shoulder drop-off." As a consequence, Mann, Sr., lost control of the vehicle and it eventually collided with a tree on the side of the roadway. Thereafter, plaintiffs filed an action against defendant, alleging in part that defendant's negligent maintenance of the shoulder of the roadway proximately caused plaintiffs' injuries.

Defendant filed an affirmative defense alleging plaintiffs' comparative negligence based on their failure to wear safety belts.[5] Defendant moved in limine for a ruling that the statutory provision, MCL 257.710e(6), does not apply in this highway liability case. The circuit court disagreed, ruling that the statutory cap of five percent applies and declining to extend the rationale of *Klinke, supra.* Defendant's interlocutory application for leave to appeal was granted, and the circuit court has stayed the trial pending a decision from this Court.

II. ANALYSIS

On appeal, defendant argues that the trial court erred in concluding that the five percent statutory cap on the reduction of damages for failure to wear safety belts applies to a claim against a road commission for failure to maintain a roadway in reasonable repair. We disagree.

---

[5] Plaintiff Patrick Mann, Sr., testified during his deposition that he and his son were wearing safety belts.

### A. THE "SEAT BELT DEFENSE"

This case turns on the interpretation of the safety belt law,[6] *Klinke*, and the Title-Object Clause, Const 1963, art 4, § 24. Some perspective on the history of the "seat belt defense" is helpful.[7]

For years, an injured party's failure to mitigate or eliminate the risk of injury by using safety belts was not considered a valid defense under the common law. *Hierta v Gen Motors Corp*, 147 Mich App 274, 278-280; 382 NW2d 765 (1985), remanded for reconsideration on other grounds 429 Mich 887 (1987); *Schmitzer v Misener-Bennett Ford, Inc*, 135 Mich App 350, 359-360; 354 NW2d 336 (1984); *Romankewiz v Black*, 16 Mich App 119, 127; 167 NW2d 606 (1969). At the time, the law in Michigan did not require a driver or passengers to use safety belts, so the court declined to impose such a duty and create a common-law seat belt defense. *Id.* at 127.

### 1. LEGISLATION

In 1984, the federal Department of Transportation announced that passive restraint systems (such as air bags) would be required beginning with 1990 model year vehicles unless states representing two-thirds of the nation's population enacted and enforced mandatory safety belt laws. Senate Analysis, SB 6, January 15, 1985; Casenotes: Lowe v Estate Motors

---

[6] MCL 257.710e.

[7] The term "seat belt defense" dates back to a time when the only belts in a car were lap belts (seat belts). Now, a three-point harness is used (lap and shoulder belts), so the term "*safety* belt" is generally used to describe the feature. MCL 257.710e uses this modern terminology. The legal expression, however, has remained the "*seat* belt defense."

Ltd.—*The Michigan Supreme Court says yes to the
seat belt defense*, 5 Cooley L R 159, 163 (1988); 49 Fed
Reg 28962 (July 17, 1984).

In response, the Legislature in 1985 enacted MCL
257.710e(3) to generally require the use of safety
belts. In another subsection, MCL 257. 710e(6), the
Legislature allowed defendants to use a seat belt
defense as evidence of negligence, but the Legislature
capped the amount of comparative negligence to five
percent.[8] Thus, for the first time, defendants could
argue that a plaintiff's failure to use safety belts con-
tributed to the plaintiff's injuries, but this failure to
mitigate could result in a reduction of the recovery by
no more than five percent. At the time, any defense
for failure to use safety belts was *legislatively* cre-
ated. If the statutory defense were not applied, a
defendant would be deprived of any seat belt defense
whatsoever. The purpose for the five percent cap was
"to protect plaintiffs against [a] drastic reduction in
damage awards." *Thompson v Fitzpatrick*, 199 Mich
App 5, 8; 501 NW2d 172 (1993).

### 2. CHANGE IN COMMON LAW

Shortly after these statutes were adopted, the
Supreme Court decided to create a *common-law* seat
belt defense as well. *Lowe v Estate Motors Ltd*, 428
Mich 439; 410 NW2d 706 (1987) (products liability
action against manufacturer and distributor of auto-
mobile). This was occasioned at least in part by the

---

[8] An early draft of the bill, HB 4203, would have required seat belt
usage but prohibited the seat belt defense. *Schmitzer, supra* at 358, n 5.

abolition of contributory negligence[9] in favor of the less harsh system of comparative negligence. *Id.* at 459-460 (RILEY, C.J.). The effect of *Lowe* is that the five percent cap can be increased under the common law if the statute does not apply. Thus, if the statutory cap does not apply, a defendant would be free to seek a more substantial deduction for a plaintiff's comparative negligence for failing to wear safety belts.

The Supreme Court in *Lowe* addressed the possible effect of the safety belt statute on comparative negligence and reduction of damages even though the parties had not briefed the issue. *Id.* at 485 (LEVIN, J., dissenting). In part V of Chief Justice RILEY's separate opinion, she wrote:

> Before addressing the second issue, we pause to acknowledge the recent enactment of the mandatory seat belt usage legislation, MCL 257.710e; MSA 9.2410(5), and to respond to the positions expressed in the dissenting opinions as they relate to that legislation. That statute, which took effect on July 1, 1985, requires drivers and front-seat passengers of motor vehicles operated in this state to wear seat belts, making the failure to use them unlawful. Section five provides, furthermore, that failure to use a seat belt in violation of the statute may be considered evidence of negligence, also providing that such negligence shall not reduce a plaintiff's recovery by more than five percent. The statutory seat belt usage requirement and its accompanying provisions are inapplicable in the instant case because: (1) the

---

[9] *Placek v Sterling Hts*, 405 Mich 638, 650; 275 NW2d 511 (1979). Coincidentally, *Placek* was a "seat belt defense" case when it first came to the Court of Appeals. See *Placek v Sterling Hts*, 52 Mich App 619; 217 NW2d 900 (1974). The Court of Appeals found that the defendant's reference to the plaintiff's failure to wear a safety belt was irrelevant and prejudicial and remanded for a new trial. *Id.* at 622. When *Placek* was appealed after the second trial, contributory negligence became the issue, leading to our Supreme Court's historic decision to adopt comparative negligence in Michigan. 405 Mich 650.

accident occurred prior to the statute's effective date, (2) plaintiff was a rear-seat passenger to whom the statute, by its terms, would not have applied, and (3) the accident occurred beyond the territorial boundaries of this state where it would not have been contrary to this statute for any passenger not to have used a seat belt. [*Id.* at 462-463.]

This section of the opinion received four votes. See *id.* at 476. Although *Lowe* was a products liability case, the Supreme Court did not include a violation of the Title-Object Clause in its list of reasons the safety belt statute would not apply. Nonetheless, because this section of the opinion was dicta, it did not bind the Supreme Court in *Klinke*.

### 3. *KLINKE*: EXCEPTION TO THE STATUTE

In 1998, the Supreme Court considered the case of *Klinke*, in which an automobile manufacturer argued that it was not bound by the five percent cap in a products liability case. *Klinke, supra* at 589. In a plurality decision, the Supreme Court agreed with the manufacturer's position.

The Supreme Court wrote three opinions. The lead opinion, written by Justice WEAVER and joined by Justice TAYLOR, interpreted the state constitution's Title-Object Clause to mean that the vehicle code's safety belt section did not affect the civil liability of manufacturers. *Id.* at 590-591. The title of the vehicle code stated that it was in part an act "to provide for civil liability of owners and operators of vehicles . . . ."[10] The title could not be used to extend civil lia-

---

[10] The full title of the act is:

An act to provide for the registration, titling, sale, transfer, and regulation of certain vehicles operated upon the public highways of

bility to manufacturers not mentioned in the title. *Klinke, supra* at 589-591.

Justice BOYLE penned the second opinion, joined by Chief Justice MALLETT and Justice BRICKLEY. In it, she wrote that the terms of art used in MCL 257.710e(6)— namely, its statement that it applies in cases " 'arising out of the ownership, maintenance, or operation of a motor vehicle' "—tracked the language of the no-fault act and showed a legislative intent to apply the statute only to no-fault cases. *Klinke, supra* at 594. Justice BOYLE also agreed with Justice WEAVER's position regarding the Title-Object Clause:

> However, the Vehicle Code, designed to regulate the liability of "owners and operators of vehicles,"[11] was not intended to regulate the liability of a manufacturer in a products liability action by subjecting the manufacturer to liability for an owner's or operator's negligent operation of a motor vehicle. The dissent would extend the safety belt statute beyond the context of the owner's or operator's lia-

---

this state or any other place open to the general public or generally accessible to motor vehicles and distressed vehicles; to provide for the licensing of dealers; to provide for the examination, licensing, and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy, and collection of specific taxes on vehicles, and the levy and collection of sales and use taxes, license fees, and permit fees; to provide for the regulation and use of streets and highways; to create certain funds; to provide penalties and sanctions for a violation of this act; to provide for civil liability of owners and operators of vehicles and service of process on residents and nonresidents; to provide for the levy of certain assessments; to provide for the enforcement of this act; to provide for the creation of and to prescribe the powers and duties of certain state and local agencies; to impose liability upon the state or local agencies; to repeal all other acts or parts of acts inconsistent with this act or contrary to this act; and to repeal certain parts of this act on a specific date.

[11] This quoted language comes from the title of the vehicle code as relied on by Justice WEAVER, not the text of the safety belt statute.

bility and require the manufacturer to pay for losses the jury has attributed to the conduct of the driver. Because the Vehicle Code does not contemplate regulation of manufacturer liability, such an extension of its scope would be error. [*Id.* at 594, n 3.]

Two justices therefore supported limiting the safety belt statute to the dimensions found in the title to the vehicle code and three supported limiting it to no-fault actions. All five agreed, however, that the title of the vehicle code did not contemplate regulation of manufacturer liability. *Klinke* is binding authority because a majority agreed on this line of reasoning. *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976); *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973).

### B. ROAD COMMISSION LIABILITY

#### 1. TITLE-OBJECT CLAUSE ANALYSIS

We find that there is a distinction between a products liability action and an action brought against a governmental unit under the highway exception to governmental immunity in the context of determining whether MCL 257.710e(6) is applicable. The distinction involves relevant language in the title of the vehicle code that supports a finding that the damage reduction cap of § 710e does not violate the Title-Object Clause if applied in the case before us today. The title of the vehicle code states, in part, that it is an act "to provide for the regulation and use of streets and highways." Justice WEAVER suggested that this language would provide for application of the cap in actions other than those against owners and operators of vehicles. *Klinke, supra* at 591, n 7. We agree

and conclude that such a reading is proper pursuant to the guiding principles concerning title-object analysis and that the referenced phrase in the title allows application of the damage reduction cap against defendant.

The decisive question here is whether applying subsection 710e(6) to the liability of governmental units for defective highways results in the subsection exceeding the scope of the title of the vehicle code. See *Klinke, supra* at 590. With regard to the liability of manufacturers in a products liability action, Justice WEAVER concluded in *Klinke, id.* at 591:

> As a matter of statutory interpretation, we must not, and under constitutional principles we cannot, apply statutes in the motor vehicle code to cases involving the civil liability of manufacturers. Accordingly, § 710e's cap on the reduction for comparative negligence for failure to wear a seat belt, which is part of the motor vehicle code, does not apply in the present action, which involves the liability of a manufacturer.

As noted above, Justice WEAVER and Justice BOYLE focused on the language contained in the title of the vehicle code, which expressed that it was an act "to provide for civil liability of owners and operators of vehicles . . . ." *Klinke, supra* at 589, 594, n 3. At first glance, it would appear that this language would support a finding that the title, and therefore subsection 710e(6), was not meant to cover the liability of governmental units under the highway exception to governmental immunity because the title does not directly speak of the civil liability of governmental

units.[12] However, the failure of the Legislature to particularly state that the act provides for "civil liability" should not defeat application of the damage reduction cap, where a governmental unit fails to properly maintain a highway over which it exercises control regarding the *highway's use and regulation.*

In Justice KELLY's dissent in *Klinke*, she stated:

> The seat belt statute affects the liability of manufacturers, but does not mention manufacturers in its title. It does not follow that its application to the civil liability of manufacturers is unconstitutional. If that were the case, would it not be unconstitutional to apply the motor vehicle code to the civil liability of pedestrians, bicyclists, passengers, and the state? [*Id.* at 603.]

In direct response to Justice KELLY's comments regarding the civil liability of those not directly mentioned in the title of the vehicle code, Justice WEAVER stated:

> The dissent incorrectly suggests that our holding (that application of the motor vehicle code to products liability actions would violate the Title-Object Clause) compels a conclusion that applying the code to pedestrians, bicyclists, passengers, or the state would similarly be unconstitutional. *This critique ignores the fact that the title of the code includes provisions that address these examples, e.g., the title states that it provides for "regulation and use of streets and highways" and for the "regulation of certain vehicles operated upon the public highways of this state."* [*Id.* at 591, n 7 (emphasis added).]

---

[12] Interestingly, the *Klinke* holding would apparently support application of subsection 710e(6) to an action against a governmental unit under the motor vehicle exception to governmental immunity pursuant to MCL 691.1405.

This language indicates that Justice WEAVER would not require the title to specifically provide for "civil liability" before application of subsection 710e(6), where there is reference in the title to a topic that necessarily encompasses the subject of a legal action.

We do not rest our position solely on the statements made by Justice WEAVER in *Klinke*, but also on the principles guiding judicial analysis of a constitutional challenge under the Title-Object Clause.

"[A]ll possible presumptions should be afforded to find constitutionality." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 464; 208 NW2d 469 (1973). The Title-Object Clause, Const 1963, art 4, § 24, provides, in part, that "[n]o law shall embrace more than one object, which shall be expressed in its title." In *Pohutski v City of Allen Park*, 465 Mich 675, 691-692; 641 NW2d 219 (2002), our Supreme Court, discussing the general nature of the Title-Object Clause, stated:

> This constitutional provision requires that (1) a law must not embrace more than one object, and (2) the object of the law must be expressed in its title. This constitutional limitation ensures that legislators and the public receive proper notice of legislative content and prevents deceit and subterfuge. The goal of the clause is notice, not restriction of legislation.
>
> The "object" of a law is defined as its general purpose or aim. The "one object" provision must be construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated. We should not invalidate legislation simply because it contains more than one means of attaining its primary object; "[h]owever, if the act contains 'subjects diverse in their nature, and having no necessary connection,'" it violates the Title-Object Clause. The act may include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement

the principal object. The statute "may authorize the doing of all things which are in furtherance of the general purpose of the Act without violating the 'one object' limitation of art 4, § 24." Finally, the constitutional requirement is not that the title refer to every detail of the act; rather, "[i]t is sufficient that 'the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose[.]'" [Citations omitted; alterations in original.]

The Legislature can make the title of an act as restrictive as it desires and may sometimes frame the title so as to preclude many matters being included in the act that might have been embraced in one enactment with the matters indicated by the title, but that must now be excluded because the title has been made unnecessarily restrictive. *Klinke, supra* at 590, quoting *In re Hauck,* 70 Mich 396, 403; 38 NW 269 (1888). Courts are without authority to enlarge the scope of a title, and the constitution has made the title the conclusive index to the intent of the Legislature with regard to what shall have operation. *Klinke, supra* at 590, citing *Hauck, supra* at 403.

Here, there is a natural correlation or connection between governmental liability for failing to maintain a highway in reasonable repair and the Michigan Vehicle Code, which governs the operation of vehicles on those same public highways. No such correlation with the vehicle code arises in the context of a products liability action that can conceivably cover anything from a defective motor vehicle to a defective toaster. If the title to the vehicle code allows the Legislature to enact statutes addressing the regulation and use of streets and highways within the code, it would be

illogical to conclude that the scope of the title did not necessarily include legislative authority to enact statutes directing limits on liability and comparative negligence, where streets and highways are not kept in reasonable repair.

The title of the vehicle code provides sufficient notice that statutes found within the code may affect the liability of governmental units for defective highways, where the title enunciates that its purpose is to provide for the regulation and use of streets and highways. Although the title does not specifically reference the "civil liability" of governmental units, the general purpose or aim clearly encompasses that matter, and any other reading would be so narrow and technical as to frustrate the legislative intent. It is proper to interpret subsection 710e(6) as being applicable in the context of the case at bar because the statute directly relates to, carries out, and implements the object of the title in regard to the regulation and use of streets and highways. The title is not framed in such a manner so as to preclude application of subsection 710e(6) to the liability of road commissions. Moreover, as our Supreme Court stated in *Pohutski*, *supra* at 692, the title need not refer to every detail, and it is sufficient if a legislative enactment contains matters germane, auxiliary, or incidental to the general purpose stated in the title. On the bases of the language in *Pohutski* and Justice WEAVER's comments, we cannot agree with defendant that application of the comparative negligence cap is unconstitutional because the vehicle code fails to specifically mention the liability of road commissions. Reading subsection 710e(6) as being applicable to an action against a governmental unit under the highway exception to gov-

ernmental immunity does not result in subsection
710e(6) exceeding the scope of the vehicle code's
title. There is no violation of the Title-Object Clause if
the statutory five percent damage reduction cap is
applied in the case at bar.[13]

### 2. STATUTORY INTERPRETATION OF MCL 257.710e(6)

Defendant mischaracterizes the holding in *Klinke*
by arguing that the Supreme Court focused on the

---

[13] With regard to the dissent's argument that definitional conflicts exist
between the vehicle code and MCL 691.1401 concerning the definition of
"highway," we fail to see how this has any effect on the title-object analy-
sis. If a plaintiff is not entitled to file suit on the basis of governmental
immunity under the highway exception because of the limiting language
defining a "highway" under MCL 691.1401(e), there is no need to reach
subsection 710e(6). If a plaintiff can maintain the suit under the narrower
highway definition found in MCL 691.1401(e), the broader highway defini-
tion found in the vehicle code, MCL 257.20, would not bar application of
subsection 710e(6). Even if a governmental unit could be liable under the
immunity statutes and application of the "highway" definition in the vehi-
cle code resulted in a plaintiff's not being required to wear a seatbelt pur-
suant to § 710e, the effect would simply be the inability of the plaintiff to
utilize the comparative negligence cap. See *Lowe, supra.* We do not agree
that in applying the cap, courts would be confronted with the dilemma of
deciding whether to apply the definitions found in the governmental
immunity statutes or those found in the vehicle code. The definitions in
MCL 691.1401 would apply to analyses of issues regarding interpretation
of the governmental immunity statutes, and the definitions in the vehicle
code would apply to analyses of issues regarding interpretation of the
statutes found in the code. Moreover, the binding holding in *Klinke* did
not rely in any part on definitional conflicts.

The dissent also argues that the Legislature obviously intended that the
*liability* of governmental units be controlled by the governmental immu-
nity statutes, not the broader vehicle code. We respectfully disagree
because the liability of governmental units can be affected or controlled
by statutes other than the immunity statutes. For example, statutes con-
cerning periods of limitation, collateral source benefits, MCL 600.6303,
and allocation of fault, MCL 600.6304, can all affect and control a govern-
mental unit's liability despite the fact that those provisions are not
included as part of the governmental immunity statutes. If other statutes
directly conflicted with the immunity statutes in any meaningful manner,
we would agree that the more specific immunity statutes control, but
there is no such conflict with regard to subsection 710e(6).

language of subsection 710e(6), which provides a cap on "damages arising out of the ownership, maintenance, or operation of a motor vehicle." Defendant maintains that the *Klinke* Court, in analyzing subsection 710e(6), examined the defendant's activity and whether it involved the ownership, maintenance, or operation of a motor vehicle. As we ruled above, the only binding principles emanating from *Klinke* concern the Title-Object Clause and the language in the title of the vehicle code in relation to a products liability case, not interpretation of subsection 710e(6). Nevertheless, we will address the issue concerning the proper interpretation of subsection 710e(6) because the matter is raised in defendant's brief.

Questions regarding statutory interpretation are reviewed de novo. *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999). Recently our Supreme Court in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), reaffirmed the following rules concerning statutory interpretation:

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. *People v Wager*, 460 Mich 118, 123, n 7; 594 NW2d 487 (1999). To do so, we begin with an examination of the language of the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and precluded. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). Only if judicial construction is necessary must this Court determine and give effect to the Legislature's intent. *Id.*

Subsection 710e(6) does not provide that "liability" must arise out of the operation of a motor vehicle, but rather that "damages" must so arise, and subsection 710e(6) does not provide that damages must arise out of the operation of a particular party's motor vehicle, but rather only that the damages arise out of the operation of a motor vehicle. Therefore, the clear language of subsection 710e(6) required only that plaintiffs suffered damages arising out of the operation of a motor vehicle as alleged here. If plaintiffs had not been operating a motor vehicle, there would not have been an accident, injuries, and damages. The operation of a motor vehicle was a necessary component giving rise to plaintiffs' cause of action, and there was a nexus between their damages and the operation of a motor vehicle.

Even if construction were required, the Legislature clearly intended such a result regardless of the fact that the potentially liable road commission was not operating a motor vehicle at the time of the accident. In *Jonas v Carissimi*, 219 Mich App 546, 552; 557 NW2d 148 (1996), this Court stated:

> In *Ullery v Sobie*, 196 Mich App 76, 80; 492 NW2d 739 (1992), this Court, while upholding the constitutionality of the five-percent cap, determined that its purpose was "to prevent the injured party from recovering substantially less based solely on the failure to wear a safety belt." Similarly, this Court in *Thompson v Fitzpatrick*, 199 Mich App 5, 8;

501 NW2d 172 (1993), held that the five-percent cap was "intended by the Legislature to protect plaintiffs against drastic reduction in damage awards."

The Senate Bill Analysis regarding supporting arguments for the 1985 amendment of MCL 257.710e indicated that "seat belt use saves lives and reduces the number and severity of injuries. Experience has shown that mandatory seat belt laws produce a significant and lasting increase in the use of seat belts, even when enforcement is relaxed." Senate Analysis, SB 6, February 26, 1985. It is abundantly clear that the Legislature intended to encourage all drivers to wear their seat belts for purposes of public safety and to limit attacks on damage awards based on comparative negligence where a defendant is negligent. We fail to see how the Legislature's intent would be furthered in any conceivable manner by limiting application of the damage reduction cap to situations involving a defendant's liability for operating a motor vehicle. It would be nonsensical to conclude that the Legislature intended to protect drivers from the horrific results of vehicle accidents where safety belts are not worn, but only where at least two motor vehicles are involved, i.e., where the occupants of a vehicle are injured through the negligence of a driver of another vehicle.[14] Such a reading is contrary to the legislative

---

[14] The Michigan Constitution provides that political power is inherent in the people and that government "is instituted for their equal benefit, security and protection." Const 1963, art 1, § 1. Our constitution further provides that "[t]he legislature shall pass suitable laws for the protection and promotion of the public health." Const 1963, art 4, § 51. With these principles in mind, we cannot conceive of any rationale for the Legislature not to have been equally concerned with vehicles involved in accidents where the vehicles strike animals, pedestrians, bicyclists, and inanimate objects, or simply where a vehicle caroms out of control. Statutes should be construed in a manner to prevent absurd results. *Camden v Kaufman,*

intent and inconsistent with the plain language of the statute.

Affirmed.

HOOD, P.J., concurred.

MARKEY, J. (*dissenting*). I respectfully dissent. Although I think the majority sets forth a reasonable analysis, I have concluded after very careful study that the more accurate conclusion is that the statutory five percent cap on the reduction for comparative negligence for failure to use safety belts does not apply to this action under the highway liability act. Also, it seems logical that whichever conclusion is ultimately reached, the decision should apply uniformly to any situation in which one claiming damages from a motor vehicle accident was not wearing a seat belt at the time of injury. It flies in the face of general common sense to apply a five percent cap on comparative negligence for failing to use a seat belt in one type of legal claim and to apply no cap in others. So, I urge either the Legislature or our Supreme Court to unify the law in this area. Regarding the case at hand, I agree with and incorporate the majority's recitation of the legislative history and the change in the common law in this area.

---

240 Mich App 389, 395; 613 NW2d 335 (2000). We recognize that the absurd result method of statutory interpretation plays no role when the statutory language is clear and unambiguous. *People v McIntire*, 461 Mich 147, 155-159; 599 NW2d 102 (1999). However, in this part of our analysis, we are merely assuming that judicial construction is necessary because of supposed ambiguities; therefore, the absurd results doctrine would be applicable. We reemphasize our position that the statute, as written, is clear and unambiguous and applies to the case before us today.

### A. *KLINKE*: EXCEPTION TO THE STATUTE

My first area of disagreement involves the effect of *Klinke v Mitsubishi Motors Corp*, 458 Mich 582; 581 NW2d 272 (1998). As the majority noted, five justices agreed that the title of the vehicle code did not contemplate regulation of manufacturer liability; consequently, *Klinke* is binding authority for this proposition. I conclude in a similar manner that, because the vehicle code does not mention the liability of road commissions, the title of the vehicle code in which the safety belt law is found provides no notice that a road commission may face liability.

### B. OTHER ARGUMENTS

#### STREETS & HIGHWAYS

Plaintiffs argue that the title of the vehicle code includes the factual situation at bar because the stated purpose of the vehicle code includes a specific reference to highway use: "to provide for the regulation and use of streets and highways." That clause indeed appears in the title of the act. Justice WEAVER's opinion was based on a strict construction of the stated purpose in the title of the vehicle code, i.e., it stated that civil liability was provided for "owners and operators of vehicles," but omitted any mention of civil liability for manufacturers of vehicles. *Id.* at 589-590.

Highway *liability* is not found in the vehicle code. It is true that the title of a statute may not list every specific purpose for it. *Metro Funeral Sys Ass'n v Comm'r of Ins*, 331 Mich 185, 192; 49 NW2d 131 (1951). Nonetheless, the Legislature does not appear

to have intended for the vehicle code to control highway commission liability. In fact, the vehicle code defines a highway in far broader terms than the governmental immunity statute. The vehicle code defines a highway or street as the "*entire width* between the boundary lines of *every way publicly maintained* when *any part* thereof is open to the use of the public for purposes of vehicular travel." MCL 257.20 (emphasis added). The highway liability exception to governmental immunity, however, defines the area of roadway to which liability attaches in narrower terms: " 'Highway' means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles." MCL 691.1401(e). Clearly, if highway liability were controlled even in part by the vehicle code, definitional conflicts would immediately arise.

The Legislature obviously intended that the *liability* of governmental units be controlled by the governmental immunity statute, not the broader vehicle code. It is logical to surmise, then, that the vehicle code's provision regarding comparative negligence as a setoff to liability was not intended to extend to the governmental immunity act's highway exception any more than does the vehicle code's definition of a highway or street. Inclusion of "regulation and use of streets and highways" in the title of the vehicle code is a prelude to the detailed traffic laws contained in that statute (see MCL 257.601 *et seq.*) and is not intended as an expansive supplement to the governmental immunity statute. The use of the phrase "to provide for the regulation and use of streets and high-

ways" in the title of the vehicle code is insufficient
under the Title-Object Clause, Const 1963, art 4, § 24,
to create or reduce a public road commission's
liability.

### OPERATION OF A MOTOR VEHICLE

Plaintiffs also argue that because this case arises
out of the ownership, maintenance, or operation of a
motor vehicle, i.e., plaintiffs' vehicle, it comes within
the purview of the motor vehicle code. Defendant
counters that this lawsuit arose from the condition of
the highway, not from the ownership, maintenance,
or operation of a motor vehicle, because the defen-
dant operated a roadway, not a vehicle. Therefore,
defendant argues, this case does not arise under the
vehicle code. Defendant's position would be sup-
ported by the Court of Appeals decision in *Klinke v
Mitsubishi Motors Corp*, 219 Mich App at 500, 509;
556 NW2d 528 (1996), in which this Court stated that
a products liability action against an automobile man-
ufacturer does not arise out of the ownership, mainte-
nance, or operation of a motor vehicle. If the Legisla-
ture had intended to include design or construction of
a motor vehicle as an included act, it could have done
so. *Id.*, citing *LaHue v Gen Motors Corp*, 716
F Supp 407 (WD Mo, 1989). Because the Supreme
Court affirmed *Klinke* on different bases, the Court of
Appeals decision in *Klinke* has been "modified" and is
not binding authority under the conflict rule, MCR
7.215(I)(1).

The parties dispute whether the plaintiff's or the
defendant's operation of a vehicle controls. It is argu-
able that this is an either/or situation because when
the identical term is interpreted under the no-fault

statute, a cause of action can arise if the *plaintiff* was operating a motor vehicle and hit a tree (such as happened here) or if the plaintiff was a pedestrian and was struck by the *defendant's* motor vehicle. Under either scenario, the no-fault law would consider the accident to have arisen out of the ownership, maintenance, or operation of a motor vehicle, and the benefits and limitations of that statute would apply. See MCL 500.3135(1) (a defendant's liability for his ownership, maintenance, or use of a motor vehicle); *Gajewski v Auto-Owners Ins Co*, 414 Mich 968 (1982), rev'g 112 Mich App 59; 314 NW2d 799 (1981) (the plaintiff was entitled to personal protection insurance benefits when his own car exploded). In any event, regardless of whether the plaintiff's or the defendant's operation of a vehicle controls, I would follow the binding authority of *Klinke* and conclude that the title of the vehicle code did not mention or contemplate the liability of road commissions.[1]

### C. CONCLUSION

The statutory five percent cap on the reduction for comparative negligence for failure to use safety belts does not apply to this highway liability case because the title of the vehicle code provides for liability of owners and operators of vehicles, but does not provide for liability of a road commission. *Klinke* controls because a majority of justices agreed with Justice WEAVER's reasoning.

I would reverse and remand.

---

[1] I note that similar to the instant plaintiffs, the plaintiff's daughter in *Klinke*, 458 Mich 585, also was operating a motor vehicle at the time that she was killed.