KELLY, J.
(dissenting). I would find that the five percent cap on damage reduction for failure to wear one’s safety belt applies to a suit brought under the highway exception to governmental immunity. This would be consistent with my dissenting opinion in Klinke v Mitsubishi Motors Corp, 458 Mich 582; 581 NW2d 272 (1998).
STATUTORY ANALYSIS
The safety belt statute provides:
Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%. [MCL 257.710e(6).]
The majority holds that, in an action pleaded in avoidance of governmental immunity premised on the highway exception, plaintiffs damages do not “arise out of the ownership, maintenance, or operation of a motor vehicle.” It bases this conclusion on the fact that the Legislature used similar language in the no-fault act.[1] That act provides in pertinent part:
*359 Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle... is abolished.... [MCL 500.3135(3).]
Although similarity exists in the language of the two statutes, it is deceptive and should not be taken to indicate that the Legislature intended identical results when applying them. A comparison of the two reveals that they are not identical. The difference in the Legislature’s choice of language is telling.
The no-fault act refers to “liability arising from the ownership, maintenance, or use... of a motor vehicle . ...” The safety belt law refers to “damages arising out of the ownership, maintenance, or operation of a motor vehicle.” Here, plaintiffs’ damages arose out the operation of the vehicle. The majority maintains that plaintiffs are not seeking damages “for” the operation of a motor vehicle. Ante at 357. However, that misconstrues the safety belt statute. By definition, the liability arising from an act and the damages caused by it are not identical. I agree with the Court of Appeals analysis:
[MCL 257.710e(6)] does not provide that “liability” must arise out of the operation of a motor vehicle, but rather that “damages” must so arise, and subsection 710e(6) does not provide that damages must arise out of the operation of a particular party’s motor vehicle, but rather only that the damages arise out of the operation of a motor vehicle. Therefore, the clear language of subsection 710e(6) required only that plaintiffs suffered damages arising out of . the operation of a motor vehicle as alleged here. If plaintiffs had not been operating a motor vehicle, there would not have been an accident, injuries, and damages. The operation of a motor vehicle was a necessary component giving rise to plaintiffs’ cause of action, and there was a nexus between their damages and the opera *360 tion of a motor vehicle. [254 Mich App 86, 103; 657 NW2d 517 (2002) (emphasis added).]
The premise upon which the majority builds its analysis is that the safety belt statute applies only in conjunction with the no-fault act. MCL 500.3135. I continue to believe that the Legislature intended the broadly based, tort damage recovery limitation of the safety belt statute to be applicable in any action involving a motor vehicle accident.
At common law, the failure to use a safety belt was not admissible to prove contributory negligence. When the safety belt statute was enacted, it was intended as a punishment for plaintiffs who did not use their safety belts, reducing their available damages. The statute encouraged drivers to wear their safety belts. By contrast, the purpose of the five percent cap was “to prevent the injured party from recovering substantially less based solely on the failure to wear a safety belt,” as I noted in Ullery v Sobie, 196 Mich App 76, 80; 492 NW2d 739 (1992). Similarly, as the Court of Appeals observed in this case[2] and in Thompson v Fitzpatrick,[3] the five percent cap was “intended by the Legislature to protect plaintiffs against drastic reduction in damage awards.” Id. at 8.
The Legislature apparently concluded that limiting recovery for those who fail to wear safety belts would further both goals. The Court of Appeals agreed with this observation:
The Senate Bill Analysis regarding supporting arguments for the 1985 amendment of MCL 257.710e indicated that “seat belt use saves lives and reduces the number and severity of injuries. Experience has shown that mandatory *361 seat belt laws produce a significant and lasting increase in the use of seat belts, even when enforcement is relaxed.” Senate Analysis, SB 6, February 26, 1985. It is abundantly clear that the Legislature intended to encourage all drivers to wear their seat belts for purposes of public safety and to limit attacks on damage awards based on comparative negligence where a defendant is negligent. [254 Mich App 104-105.]
Thus, the more legal actions in which the damage cap applies, the more effective the act will be. The fact that the state of the law has changed does not retroactively alter the Legislature’s intent in passing the safety belt statute.
The majority acts to frustrate this legislative intent. The language of the safety belt statute reduces one’s damages by five percent. Nothing suggests that the Legislature wanted to reduce damages by five percent in a two-car accident, but set no limit where only one car was involved. Absent some indication of such intent, it is illogical to conclude that the Legislature intended such disparate results from the same negligence, failing to wear a safety belt.
For example, if a motorist whose only negligence is his failure to wear a safety belt is hit by a truck, his damages will be reduced by five percent under the statute. However, if, instead, the accident involves a negligent bicyclist, applying the majority’s interpretation, the same injured motorist could experience a much greater damage reduction for failing to wear a safety belt.
The Legislature enacted a standard of care, the wearing of safety belts, that carries a limited penalty for its violation. The majority frustrates the Legislature’s intent and limits its power by finding a clear indication of intent that the statute be applied only to no-fault cases. This is despite the fact that the safety belt statute *362 itself contains no such limitation. The majority extrapolates the limitation from the Legislature’s use of the same string of words in the no-fault act as in the Vehicle Code. I interpret the use of the phrase “ownership, maintenance or operation of a motor vehicle” as a convenient description for the common uses of motor vehicles, not a limitation of the damage cap to no-fault claims.
CONCLUSION
I would find that the five percent cap on damages reduction for failure to wear a safety belt applies to a suit brought under the highway exception to governmental immunity. It is apparent that the intent of the Legislature in passing the safety belt act was twofold: to foster public safety and to limit attacks on damage awards based on a motorist’s comparative negligence in failing to wear a safety belt. Subsequent changes in the law cannot affect the Legislature’s intent at the time that the cap was enacted. Applying the cap only to no-fault cases defies the Legislature’s intent and reads into the statute a limitation not written there.
Accordingly, I would affirm the decision of the Court of Appeals and of the trial court.
CAVANAGH, J., concurred with KELLY, J.

 The majority maintains that its holding is not based solely on the similarity in the language of the safety belt statute and the no-fault act. It insists instead that “the terms of the safety belt statute limit its applicability to motor vehicle accidents under the no-fault act.” Ante at 354 n 6. However, the safety belt statute makes no reference to the no-fault act. Therefore, despite its assertion to the contrary, the majority bases this conclusion solely on the fact that the Legislature used similar language in the no-fault act.

 254 Mich App 103-104.

 199 Mich App 5; 501 NW2d 172 (1993).